IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

TODD L. MYERS, Pro Se
231 Independence Dr.
Chestnut Hill, MA 02446

v.

US DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

And

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

Civil Action No. 18cv12569

**COMPLAINT FOR DECLATORY**

**AND INJUNCTIVE RELIEF**

Request for expedited consideration
pursuant to 28 U.S.C §1657(a)

## INTRODUCTION

1.      After submitting a Touhy Request to the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") and receiving a wholly unsatisfactory response, attached, the appellant asks the Court to assist in the production of documents and communications pertinent to the *Commonwealth of Massachusetts vs. Todd L. Myers*, Docket No. 1884-CR-00739.

2.      This initial Touhy Request[1] was sent as a result of the persistent and catalyzing influence of the FBI, and therefore the DOJ, throughout the case and the events leading up to it.  The FBI, through the introduction of a thoroughly unreliable informant, Dr. Ronald Nasif, began the investigation into the defendant in the above action.  However, the errors and pitfalls of the investigation are of a much earlier vintage.

3.      This would relate to the erroneous FBI Criminal Justice Information Services ("CJIS") data that allowed the Boston Police Department to leave an ArmaLite AR-15 in the defendant's home <u>after</u> the execution of a deeply flawed search and seizure.  This and another rifle owned by the defendant were "not recorded" by CJIS when legally purchased in Massachusetts five years ago.  This "omission" aided the BPD in leaving said rifle in the defendant's home <u>after the search was completed</u> under the cover of plausible deniability.  This "oversight" has been documented by both police statements and video evidence taken on the day in question – they are attached.

---

[1] See Documents Related to Suffolk County Criminal Proceedings pages 28 - 40

4.     Moreover, the search was initiated and executed by an FBI/BPD Joint Task Force employee, Det. Scott MacCallum, who entered the E-5, West Roxbury, district without legal and appropriate supervision.  It was search lacking in almost every reasonable aspect of probable cause, be it particularity, predicitivness, corrobation or nexus, and exhibited a recklessness and flagrant disregard for the truth as to make this a policy nightmare.  It is also a search that exceed the bounds prescribed by the warrant, as one of Mr. Myers' old cell phones was taken, and that has been executed in a manner consistent with a "sneak and take" (another old, broken cell phone) within the last few months.  What the appellant is describing is the wholesale repeal of his civil liberties.  Furthermore, the FBI/BPD in effect, placed a firearm, an AR-15, in the appellant's hands after provoking him *in extremis.* Therefore, the Court is faced with a choice for the impetus behind these actions:  astonishing negligence or malevolence.

5.     By provocation, the appellant is referring to the warrant-free raid of his home, at 231 Independence Drive, recommendations to and the assistance of his ex-wife in procuring a restraining order despite no prior history of violence and what the appellant hopes to show, should this motion pass, a widespread effort to truly torment, if not torture at a low level, the appellant over a long period of time.

6.     This is not a claim made lightly.  I will be specific.  I believe that through my former landlord, Mr. Nasif, and/or co-tenant, Mr. James "Wes" Turner, an Army employee, a long term program of sleep deprivation was utilized against the appellant.  Please do note the presence of the Army, they do show up at terribly important junctures as can be seen in the Affidavit.  Not incidentally, another Army employee, working at Temple Israel, the

defendant's temple, was actually the first source of the alleged magazines the defendant is currently being charged with possessing.  As we will discuss in the year ahead another former army employee and business school classmate, Brian Burchfield, the appellant believes deliberately gave him privileged information regarding IndyMac Bank from his time spent with a NRSRO, a nationally recognized statistical rating organization.  The appellant believes this was done solely to entrap and harm the appellant.  But this must wait.

7.     This "priming" of the appellant, through sleep deprivation, was then harnessed by a multitude and variety of minor attacks and provocations that have become so pervasive in the appellant's life, it has become a daily source of disbelief, horror and amusement.  To fully understand the nuance and subtleties of some of the provocations being proffered, the appellant recommends a brief reading of *The Commonwealth of Mass. vs. Ross, 73 Mass. App. Ct. 181, 896 N.E. 2d 647* attached.  Please consider this case in the light of "plausible deniability" that the appellant can prove with regard to AR-15 found post-search through the video evidence offered by the BPD (provided) and understand how frustrating and potentially dangerous simple activities such as a daily commute have become for Mr. Myers.  Provocation and escalation are the names of the game here.

8.     In addition, in every interaction the appellant has had with the state, be it federal, state or local, over the past few years, the appellant has been treated punitively, abused, thwarted and/or delayed.  A perfect example would be the appellant's Kafkaesque interactions over the last few years with the IRS.  Not only has the appellant been hounded for payments already made but his payments have also been delayed surreally due to overpayment.[2]

---

[2] See attached documents – Miscellaneous Documents "Misc Docs" pages 1-4

Please note that this "abuse" includes the actions taken in the *Commonwealth v. Todd L. Myers* as well as the Norfolk Probate Court pre and post the 209-A restraining order.  This includes but is not limited to the District Attorney's office refusing to provide receipts for service of documents[3], the ADA withdrawing and reentering his appearance, to again avoid service, and the refusal of the ADA to admit FBI involvement until two weeks before suppression motions were due, a mere eight months after the fact.

9.      These obstacles can also be found among the appellant's dealings in Norfolk Probate Court as he has found horrific bias throughout the first Guardian ad Litem ("GAL") report that has severely prejudiced the proceedings.  This has been compounded by the stunning refusal of Judge Petersen's refusal to follow through on her own orders as stated on the record.  This order would have released the notes behind the GAL report.  The appellant has now filed a request for clarification twice and has yet to receive the promised orders.  This is despite a spotless record during visits by Mr. Myers and questions from him to the court and the Court's appointed supervisor <u>regarding the multitude of injuries with which his children have been appearing to their visits</u>.  A true copy of the Motion for Clarification is attached.[4]

10.     The cumulative impact of these events has resulted in Mr. Myers not having regular time with his children in eight months and he has not even been allowed to see them in almost three months.  Please consider the emotional and psychological toll imposed by this absence and then layer upon that, sleep deprivation that has persisted on the scale of years.

---

[3] See attached documents – Documents Related to Suffolk County Crim. Proceedings, "Suffolk" page 14
[4] See attached documents – Documents Related to Norfolk Family and Probate, "Norfolk" pages 41 - 47

11.     Consequently, the defendant in the aforementioned actions, at this point, requests the

documents and communications related to the defendant since the faulty CJIS was entered

more than five years ago when the two Palmetto State Arms AR-15 lowers were legally

purchased in Massachusetts.  In addition, the defendant requests the privilege logs

associated with the defendant's Department of Justice/FBI files so as to facilitate a more

complete exploration of the facts of the case.  Thank you for your attention to this matter.

Please refer all communications to the above listed address.


**The Appellant's Request for the Production of Documents and Communications**


*In responding to the document request, please apply the instructions and definitions set
forth below:*


12.     In complying with this request, please produce all responsive documents in unredacted
form that are in your possession, custody, or control or otherwise available to you,
regardless of whether the documents are possessed directly by you.

13.     Documents responsive to the request should not be destroyed, modified, removed,
transferred, or otherwise made inaccessible.

14.     In the event that any entity, organization, or individual to be documented in the request
has been, or is currently, known by any other name, the request should be read also to
include such other names under that alternative identification.

15.     Each document should be produced in a form that may be copied by standard copying
machines.

16.     When producing documents, please identify the paragraph(s) the subpoena's request to
which the document responds.

17.     Documents produced pursuant to this request should be produced in the order in which
they appear in your files and should not be rearranged.  Any documents that are stapled,

clipped, or otherwise fastened together should not be separated.  Documents produced in response to this request should be produced together with copies of file labels, dividers, or identifying markers with which they were associated when this request was issued.  Indicate the office or division and person from whose files each document was produced.

18.     Each folder and box should be numbered, and a description of the contents of each folder and box, including the paragraph(s) of the request to which the documents are responsive, should be provided in an accompanying index.

19.     Responsive documents must be produced regardless of whether any other person or entity possesses non-identical or identical copies of the same document.

20.     The defendant requests electronic documents in addition to paper productions.  If any of the requested information is available in machine-readable or electronic form (such as on a computer server, hard drive, CD, DVD, back up tape, or removable computer media such as a thumb drive, flash drive memory card and external hard drive), please provide it in a format that is accessible to today's Intel based, Window's (XP and above) compatible computers. Documents produced in electronic format should be organized, identified, and indexed electronically in a manner comparable to the organizational structure called for in paragraphs (6) and (7) in the above "Instructions".

21.     If any document responsive to this request was, but no longer is, in your possession, custody, or control, or has been placed into the possession, custody, or control of any third party and cannot be provided in response to this request, you should identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control or was placed in the possession, custody, or control of a third party.

22.     If any document responsive to this request was, but no longer is in your possession, custody, or control, state:

a. How the document was disposed of;

b. The name, current address, and telephone number of the person who currently has possession, custody, or control over the document;

c. The date of the disposition; and

   *d.* The name, current address, and telephone number of each person who authorized said disposition or who had or has knowledge of said disposition.

23. If any document responsive to this request cannot be located, describe with particularity the efforts made to locate the document and the specific reason for its disappearance, destruction, or unavailability.

24. All documents should be Bates-stamped sequentially and produced sequentially. In a cover letter to accompany your response, you should include a total page count for the entire production, including both hard copy and electronic documents.

25. In the event that a responsive document is withheld on any basis, including a claim of privilege, you should provide a log containing the following information concerning every such document: (a) the reason the document is not being produced; (b) the type of document; (c) the general subject matter; (d) the date, author, and addressee; (e) the relationship of the author and addressee to each other; and (f) any other description necessary to identify the document and to explain the basis for not producing the document.

26. If the request cannot be complied with in full, it should be complied with to the extent possible, which should include an explanation of why full compliance is not possible.

27. Please do not incur reimbursable expenses in excess of $10,000 in the pursuit of this documentation. If this ceiling is hit, please forward the compiled documents as soon as possible, in requested form, and cease the collection of documents until the defendant provides further instructions.

28. Upon completion of the document production, please certify in writing that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; (2) documents responsive to the request have not been destroyed, modified, removed, transferred, or otherwise made inaccessible since the date of receiving the request or in anticipation of receiving the request, and (3) all documents identified during the search that are responsive have been produced, identified in a log provided and as described in (15) above or identified as provided in (10), (11) or (12) above.

## Definitions

29.     The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded and whether original or copy, including but not limited to the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, interoffice and intra-office communications, electronic mail ("email"), instant messages, text messages, calendars, contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, invoices, transcripts, diaries, analyses, returns, summaries, minutes, accounts, messages, correspondences, circulars, reviews, opinions, studies and investigations, surveys, presentations, spreadsheets and work sheets. The term "document" includes all drafts, preliminary versions, alterations, modifications, revisions, changes and amendments to the foregoing, as well as any attachments or appendices thereto.

30.     The term "documents in your possession, custody or control" means (a) documents that are in your possession, custody or control, whether held by you or your past or present agents, employees or representatives acting on your behalf; (b) documents that you have a legal right to obtain, that you have a right to copy, or to which you have access; (c) documents that have been placed in the possession, custody or control of any third party.

31.     The term "communication" means each manner or means of disclosure or exchange of information, regardless of the means utilized, whether oral, electronic, by document or otherwise, and whether in an in-person meeting, by telephone, facsimile, email (desktop or

mobile device), text message, instant message, MMS or SMS message, regular mail, telexes, releases or otherwise.

32.     The terms "and" and "or" should be construed broadly and either conjunctively or disjunctively as necessary to bring within the scope of this request any information which might otherwise be construed to be outside its scope.  The singular includes the plural number and vice versa.  The masculine includes the feminine and neuter genders.

33.     The terms "person" or "persons" mean natural persons, firms, partnerships, associations, limited liability corporations and companies, limited liability partnerships, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, other legal business or government entities, or any other organization or group of persons, and all subsidiaries, affiliates, divisions, departments, branches and other units thereof.

34.     The terms "referring" or "relating," with respect to any given subject, mean anything that constitutes, contains embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

35.     The terms "you" or "your" means and refers to you as a natural person and the United States and any of its agencies, offices, subdivisions, entities, officials, administrators, employees, attorneys, agents, consultants, staff, contractors, or any other persons acting on your behalf or under your control or direction; and includes any other person(s) defined in the document request letter.

36.     The term "snapshot" means a report or short description or actual screenshot that gives an understanding of a situation at a particular time.

## Schedule of Discovery Request

37.     All documents and communications regarding research or investigations or surveillance

or operations pertaining to or concerning the defendant, Todd L. Myers by the Federal

Bureau of Investigation ("FBI"), its supervisory agency, the Department of Justice ("DOJ"), and

any persons, corporations or contractors affiliated, employed by or overseeing any of the

above since January 1, 2013;

38.     In addition, all documents pertaining to the initiation and renewal of warrants for

surveillance pertaining to or concerning the defendant, Todd L. Myers, by the FBI or DOJ as

well as any applications for a warrant, even if denied;

39.     Documents sufficient to show the identity, names, titles, and business addresses of all

personnel who participated in the research or investigation or surveillance or operations

pertaining to Mr. Myers including any persons, corporations or contractors affiliated,

employed by or overseeing any of the above;

40.     Any documents, be they paper or digital, referenced by FBI Special Agent Andrew Howe

used in evaluating the defendant resulting in his contacting the Boston Police Department

and any further communication between the FBI/DOJ and the BPD;

41.     Any documents, be they paper or digital, possessed by FBI Special Agent Steve Kimbal

concerning Mr. Myers in the years and months leading up to the search of his home,

including those related to how Agent Kimbal came to be involved in the actions taken by the

Boston Police Department and any communications Agent Kimbal was a party to within the

FBI/DOJ concerning Mr. Myers;

42.     Any documents, be they paper or digital, concerning Messrs. Nasif (Matthew and Ronald) in the 2 years leading up to the search of Mr. Myers' home, including those related to how the Nasifs came to be involved in the actions taken by the Boston Police Department and any communications the Nasifs were a party to with the BPD/FBI/DOJ concerning Mr. Myers;

43.     Any documents, be they paper or digital, concerning James "Wes" Turner and, by now, his wife Brittany (both US Army) in the 2 years leading up to the search of Mr. Myers' home, including those related to how the Turners came to be involved in the actions taken by the Boston Police Department and any communications the Turners were a party to with the BPD/FBI/DOJ concerning Mr. Myers;

44.     Any documents, be they paper or digital, concerning Leslie Biltekoff Myers in the two years and months leading up to the search of Mr. Myers' home, including those related to how the Ms. Myers came to be involved in the actions taken by the Boston Police Department and any communications Ms. Myers was a party to with the BPD/FBI/DOJ concerning Mr. Myers;

45.     All documents, at semi-annual intervals or "snapshots" of changes to the defendant's file as well as the file itself, and communications, over the full time period, regarding the defendant from the Criminal Justice Information System ("CJIS") as well as the privilege logs (a continuous record) associated with the defendant's files be they FBI or DOJ;

46.     All documents and communications referring to or relating to FBI or Department of Justice request's to review, report on, analyze or amend the defendant's file within CJIS, the FBI or any persons, corporations, contractors otherwise affiliated, employed by or overseeing any of the above;

Respectfully submitted,

Todd L. Myers

231 Independence Drive

Chestnut Hill, MA 02467

617.991.6990

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the Department of Justice's Steven A. Engel, Assistant Attorney General and the Federal Bureau of Investigation's Office of the General Counsel, Dana Boenteu by mail on December 17th, 2018, postage prepaid to: the U.S. Department of Justice, 950 Pennsylvania Avenue, NW Washington, DC 20530-0001 and FBI Headquarters 935 Pennsylvania Avenue, NW Washington, D.C. 20535-0001.

SIGNED under the pains and penalties of perjury.

Dated: December 17th, 2018

Todd L. Myers, Pro Se