IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

TODD L. MYERS, Pro Se
231 Independence Dr.
Chestnut Hill, MA 02446

v.

US DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

And

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

Civil Action No. 1:18-CV-12569-ADB

**MOTION FOR SUMMARY JUDGEMENT**

Request for expedited consideration
pursuant to 28 U.S.C §1657(a)

**INTRODUCTION**

1. The appellant in the above action, Todd L. Myers, moves the Court for summary judgment on appellant's claims pursuant to Federal Rule of Civil Procedure 56(c). A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The appellant does so in order to avoid the cost and delay of a lengthy litigation especially given the fast track status of criminal actions where he is the defendant and as a result of the clear points of contact provided by the federal agencies who drove the investigation which resulted in the *Commonwealth of Massachusetts v. Todd L. Myers*.

2. "For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Essex Ins. Co. v. McFadden, No. 6:09-cv-00193, 2010 WL 2246293, at *3 (E.D. Tex. June 3, 2010)*. In support of this motion, the appellant will highlight a few specific points of fact highlighting federal involvement in the investigation leading up to the Commonwealth v. Todd L. Myers as well as documents related to this and the most recent escalations of administrative violence. The appellant further respectfully refers the Court to the previously submitted Complaint for Declaratory Relief, Affidavit and Memorandum of Reasons and their supporting documents generally as overwhelming evidence of the unbelievable scope of administrative violence to which the appellant has been subjected. "In determining whether a moving party has met its burden of persuasion, the court is obliged to take account of the entire setting of the case, and must consider all papers of record as well as any materials prepared for the motion. 10A Wright § 2721, p. 44." *Celotex Corp. v. Catrett, 477 U.S. 317 [Note 2/2] (1986)*. While the source of these actions

may be in question, their existence and number and almost certain negative outcome for the appellant beg further exploration.

3. The escalation of the administrative violence experienced by the appellant is a driving reason behind this filling. The appellant has finally been able to obtain documentation regarding the difficulties he has experienced when trying to attach anything to any of his dockets. These difficulties, or "frictions", can be found not only in the public sphere but also in the private sector and need to be confronted before the appellant's next filing is regarding Habeas Corpus and is filed using a crayon and lined paper. The appellant has attached two of the most recent "frictions" or difficulties experienced while attending to his legal responsibilities.

4. The first relates to the last filing here is U.S. District Court. Here[1] one can see receipts collected by the appellant after providing service to the Deparment of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") regarding this action. The time on the receipt collected by the appellant can be seen to be 3:58 PM, two minutes before the signed certification would have become invalid and the appellant could be charged with perjury. Interestingly, the receipt provided by Federal Express Corp., online incorrectly states the time of the transaction as 4:01PM.

5. Inconveniences and errors such as these have become commonplace for the appellant – as previously shown. Unfortunately, such problems continue and have entered even the operations surrounding hearings as well, hence the referral in the introduction. The

---

[1] Please see Federal Express Corp receipts pages 1 – 3 (please note all page numbers refer to attached docs which can be found at the rear)

appellant has finally been able to document a hearing where his criminal action was to be weighed but no posting regarding the matter could be found. A schedule was posted outside the courtroom but his scheduled hearing was not to be found on it. Nor was there a record of the hearing in the Suffolk County Superior Court clerk's office. The appellant took both morning schedules and the afternoon schedule – they can be found attached[2]. It was not until the appellant stopped the court where his previous motions had been held and demanded access to his docket and calendar[3] that he was even informed of where and when his trial was to commence. Accordingly, the appellant asks the Court what type of due process can one expect when it is made difficult, if not impossible, to serve documents in a timely manner or to even be informed of when and where one's trial is being held?

> "If the defendant produced not one, but 100 eyewitnesses, while the plaintiff stuck with his single witness, would that case, under the Court's holding, still go to the jury? After all, although the plaintiff's burden in this hypothetical contract action is to prove his case by a mere preponderance of the evidence, the judge, so the Court tells us, is to 'ask himself . . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.' Ante at 477 U. S. 252." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)*.

### STATEMENT OF ISSUES

6.  Mr. Myers has requested the documents and communications related to the appellant since the faulty FBI Criminal Justice Information Services, ("CJIS") information was entered more than five years ago when the two Palmetto State Arms AR-15 lowers were legally purchased in Massachusetts. In addition, the appellant has requested the privilege logs

---

[2] Please see "Comm. Of Mass. Suffolk County Criminal – Criminal Daily result List CRCM and SUCRCM" pages 4 – 8, "Comm. Of Mass. Suffolk County Criminal – Criminal Daily result List CR1 Criminal 1" pages 9 – 19 and "Office of Maura A. Hennigan, Clerk Magistrate, Wed. Dec 12, 2018" page 20

[3] Please see "CourtView Justice Solutions Criminal Case Summary 1884CR00739" page 21

associated with the appellant's Department of Justice/FBI files so as to facilitate a more complete exploration of the facts of the case for the combined benefits of impeachment going forward and developing a more effective defense. For a more detailed examination of the request please see page 11 of the appellant's "Complaint for Injunctive and Declaratory Relief" beginning with paragraph 37.

7. In question is the inadequate response of the FBI and the DOJ to the initial Touhy Request sent by the appellant. The appellant has commenced an appeal under the American Procedure Act, 79-404, 60 Stat. 237, where the court may overturn the agency's decision to deny disclosure if the decision is found to be, "arbitrary, capricious, <u>an abuse of discretion,</u> or <u>otherwise not in accordance with the law.</u>" 5 U.S.C. § 706(2)(A). Of central importance is the capacity in which the FBI participated in the investigation leading up to April 10th illegal search and seizure of the Mr. Myers' property at 231 Independence Drive in Chestnut Hill, Massachusetts. The FBI's level of participation is essential in determining the extent of the discovery that will be allowed the appellant as per:

> Massachusetts Rules of Criminal Procedure Criminal Procedure, **Rule 14: Pretrial discovery:**
>
> The prosecution shall disclose to the defense, and permit the defense to discover, inspect and copy, each of the following items and information at or prior to the pretrial conference, provided it is relevant to the case and is in the possession, custody or control of the prosecutor, persons under the prosecutor's direction and control, <u>or persons who have participated in investigating or evaluating the case</u> and either regularly report to the prosecutor's office or have done so in the case.
>
> **Fed. R. Civ. P. 26 (b)(1)** - Discovery Scope and Limits - Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is <u>relevant to any party's claim or defense</u> and <u>proportional to the needs of the case, considering the importance of the</u>

<u>issues at stake</u> in the action, the amount in controversy, the parties' <u>relative access to relevant information</u>, the parties' resources, <u>the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.</u> Information within this scope of discovery need not be admissible in evidence to be discoverable.

    i. "The distinction between matter relevant to a claim or defense and matter relevant to the subject matter was introduced in 2000. The 2000 Note offered three examples of information that, suitably focused, would be relevant to the parties' claims or defenses. The examples were "other incidents of the same type, or involving the same product"; "information about organizational arrangements or filing systems"; and <u>"information that could be used to impeach a likely witness."</u> Such discovery is not foreclosed by the amendments. <u>Discovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery."</u>

8. Until three weeks ago, the Assistant District Attorney Connelly denied any participation of the FBI in the investigation of the appellant. Thus far, the appellant has only received one document from the FBI – the incident report from Special Agent Andrew Howe[4] introducing the highly unreliable Nasifs to the Boston Regional Intelligence Center ("BRIC") and therefore the BPD. Therefore, the appellant has been denied any sort of proportional level of discovery and information that the appellant believes is essential to his defense remains elusive.

9. And finally, is the appellant entitled to a judgement as a matter of law on that count?

10. Therefore, in an effort to simplify the deliberative process implicit in a summary judgement regarding "credibility determinations,"[5] the appellant, anticipating that the "the evidence of

---

[4] Please see CW v. Todd Myers 000092 page 22
[5] *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 269 (1986).*

the non-movant is to be believed"[6] has used in this motion, in almost every instance, the evidence put forth by the combined BRIC/FBI/BPD. And bearing, "the initial responsibility of informing the… court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)*, the appellant presents the following:

1. 1 photo from the BRIC raid on the appellant's home on April 17th, 2018, page 30;
2. 2 videos from the BRIC raid on the appellant's home on April 17th, 2018, see CD with additional supporting photographs;
3. 1 slide from a BRIC employee or intern documenting in broad terms the structure and role of the BRIC, page 28;
4. 4 incident reports from the BRIC or Boston Regional Intelligence Center – a fusion center coordinating the work of federal and local law enforcement pages 22 - 25;
5. 1 response from the Commonwealth of Massachusetts' ADA Robert William Connelly pages 26 - 27;
6. 4 calendars from December 12th, 2018 provided by Suffolk County Superior Court, pages 4 - 21;
7. 2 receipts from the same transaction with Federal Express Corporation, documented in 3 photographs or screen captures, pages 1 - 3.

11. Before an analysis of these documents is conducted, please note that <u>only one</u> of these pieces of evidence, the receipts (#7), is offered by the appellant. Numbers one through four are BRIC/FBI/BPD documents and numbers five and six are both products of the Commonwealth of Massachusetts. Therefore the appellant is in effect asking the Court, to

---

[6] *Id. at 269*

rule for a summary judgement based primarily on documents offered by those prosecuting him.

**FACTS**

12. The appellant submitted a Touhy Request on November the 28th to the DOJ and the FBI and received a wholly unsatisfactory, boilerplate response. Therefore, appellant asks the Court to assist in the production of documents and communications pertinent to the *Commonwealth of Massachusetts vs. Todd L. Myers,* Docket No. 1884-CR-00739 as specified in the appellant's "Complaint for Declaratory and Injunctive Relief" page 11 commencing with paragraph 37.

13. The initial Touhy Request was sent as a result of the persistent and catalyzing influence of the FBI, and therefore the DOJ, throughout the case and the events leading up to it. The FBI, through the introduction of a thoroughly unreliable informant[7], Dr. Ronald Nasif, began the investigation into the appellant in the above action. Dr. Nasif's credibility is lacking due to his recent loss of his license to practice medicine as a result of employing, as his representative, a felon previously convicted for dealing drugs, see *Board of Registration in Medicine v. Nasif, M.D., 2017, Docket No. RM-16-163.* This is in addition to two recent malpractice lawsuits he recently faced as well as his family's involvement in a local Ponzi scheme. While this is certainly and interesting cornerstone for a case, the errors and pitfalls of the investigation are of a much earlier vintage.

---

[7] Please see CW v Todd Myers 000092 – FBI Special Agent Adam Howe's note page 23

14. This would relate to the erroneous FBI, Criminal Justice Information Services ("CJIS"), data that allowed the BRIC/FBI/BPD to leave an ArmaLite AR-15 in the appellant's home <u>after</u> the execution of a deeply flawed and unconstitutional search and seizure. This and another rifle owned by the appellant were "not recorded" by CJIS[8] when legally purchased in Massachusetts five years ago. This "omission" aided the BPD in leaving said rifle[9] in the appellant's home <u>after the search was completed</u> under the cover of plausible deniability. This "oversight" has been documented by both police statements and video evidence taken on the day in question: they are included and can be found on the accompanying CDs.

15. The search was initiated and executed by a BRIC/FBI/BPD Joint Terrorism Task Force employee, Det. Scott MacCallum while "accompanied" by FBI Special Agent Steve Kimbal.[10] Furthermore, it is implicitly acknowledged in ADA Connelly's "Commonwealth's Supplemental Response... for Production of Documents" that Det. MacCallum does operate in some capacity as an agent of the FBI. Also note, in the slide provided[11], that the BRIC is a fusion center coordinating the work of federal and local law enforcement. It also is more likely than not that this organization is managed or controlled by federal authorities.

16. Det. Scott MacCallum claims to have executed his search warrant at 231 Independence Dr. at precisely 7PM[12]. Sunset that April 10th occurred at approximately 7:20PM. Please consult the photograph taken from inside the appellant's home showing an officer standing

---

[8] Please see CW v Todd Myers 000031 – "Criminal Justice Information System check showed that Myers owned <u>12</u> firearms." Page 24

[9] Please see Incident Report labeled CW v Todd Myers 000038 – "<u>thirteen firearms</u> have been recovered." Page 25. Note that this does not include the rifle taken by Det. MacCallum taken on that day – bringing the total to 14.

[10] Please see Commonwealth's Supplemental Response Page 26 - 27

[11] Please see "Boston Police Department – Boston Regional Intelligence Center" page 28

[12] Please see Incident Report labeled CW v Todd Myers 000033 page 29

outside awash in mid-day sunlight.[13] It is therefore clear that the BRIC entered the appellant's home in advance of the warrant in violation of his 4th Amendment rights highlighting the government's repeated and serious violations of the appellant's civil liberties and the need for redress. Furthermore, note that in Det. MacCallum's incident report on CW v. Todd Myers 000033 the search warrant number does not match either the actual warrant[14] or even the application for a warrant[15].

17. Consequently, the appellant, as a result of the <u>four irrefutable points of contact</u> made by Federal Bureau of Investigation:

1. FBI Special Agent Howe's introduction of the wholly unreliable Nasifs;
2. The faulty data provided by the FBI's CJIS regarding the number of the appellant's firearms, which resulted in the BRIC leaving an AR-15 in the appellant's home after the raid;
3. The dual nature of the BRIC as a fusion center for the coordination of federal and local law enforcement that has absurdly been denied by the Suffolk County District Attorney's office;
4. The only recently acknowledged presence of FBI Special Agent Steve Kimbal in the unconstitutional raid on the appellant's home;

---

[13] Please see photo page 30
[14] Please see CW v. Todd Myers 000039 page 31
[15] Please see CW v. Todd Myers 000043 page 32

which would classify them as, "persons who have participated in investigating or evaluating the case" as per M.R.C.P. Rule 14 and the requested information as "relevant to [the] party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action" as per Fed. R. Civ. P. 26 (b)(1), requests the documents and communications related to the appellant since the faulty CJIS data was entered more than five years ago. This is, of course, when the two Palmetto State Arms AR-15 lowers were legally purchased by Mr. Myers in Massachusetts. In addition, the appellant requests the privilege logs associated with the appellant's Department of Justice/FBI files so as to facilitate a more complete exploration of the facts of the case as the errors at CJIS were likely intended to harm the appellant and are easily recovered.

18. The appellant asks this Court to consider if the investigation into Mr. Myers could have even happened without the Federal Bureau of Investigation. If one were to assume quite simply that the BRIC was in fact under federal oversight, which would require not even a large leap, then the entirety of this investigation would belong to the Federal Bureau of Investigation and the Department of Justice. It is also a question that has disturbing implications regarding the federal control of local law enforcement.

19. Therefore, under Rule 56(a) of the Federal Rules of Criminal Procedure, summary judgement is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgement as a matter of law." Fed. R. Civ. P 56(a). In this instance, the appellant has shown that the only variable that remains is the degree of control by federal agencies over the BRIC which is hardly necessary to prove that the DOJ and the FBI were "participants in" or "evaluated" the investigation. The FBI was the

point of origin, the source of, or at the very least complicit with, the constitutional violations and without question the point of critical failure (CJIS). To hold them blameless and not demand proportional discovery would simply compound the wrong.

20. And finally, given the sheer number and pervasive nature of the negative influences exerted on the appellant in both the public and private sectors, which no matter his direction are vectored against him, and the parallel forces that they all appear to exert, is it unreasonable to request the exploration of the governmental aspects of the equation? Given the consequences faced by the appellant, he believes that it is not.

21. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 249 (1986).*

22. Thank you for your attention to this matter. Please refer all communications to the above listed address.

Respectfully submitted,

*[signature: Todd Myers]*

Todd L. Myers
231 Independence Drive
Chestnut Hill, MA 02467
617.991.6990

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the Department of Justice's Steven A. Engel, Assistant Attorney General and the Federal Bureau of Investigation's Office of the General Counsel, Dana Boenteu by mail on December 17th, 2018, postage prepaid to: the U.S. Department of Justice, 950 Pennsylvania Avenue, NW Washington, DC 20530-0001 and FBI Headquarters 935 Pennsylvania Avenue, NW Washington, D.C. 20535-0001.

SIGNED under the pains and penalties of perjury.

Dated: December 26th, 2018

_Todd Myers_
Todd L. Myers, Pro Se